1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ESTRELLA ESTILLER ALEDIA, | ) | Civil No. 12cv01744 WQH(RBB) |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **DENYING PLAINTIFF'S MOTION FOR** |
| v. | ) | **SUMMARY JUDGMENT [ECF NO. 18]** |
| | ) | **AND GRANTING DEFENDANT'S** |
| CAROLYN W. COLVIN, Commissioner | ) | **CROSS-MOTION FOR SUMMARY** |
| of Social Security, | ) | **JUDGMENT [ECF NO. 19]** |
| | ) | |
| Defendant. | ) | |

On July 16, 2012, Plaintiff Estrella Estiller Aledia filed a

Complaint against Defendant Michael J. Astrue, the then-

Commissioner of Social Security [ECF No. 1].  Plaintiff challenges

the denial of her claim for disability insurance benefits.  (Compl.

2-3, ECF No. 1.)  Defendant filed an Answer on October 12, 2012,

along with the Administrative Record [ECF Nos. 10, 11].  On

February 26, 2013, Aledia's Motion for Summary Judgment was filed

[ECF No. 18].[1]

---

[1]  Because Plaintiff's Motion for Summary Judgment is not
consecutively paginated, the Court will cite to it using the page
numbers assigned by the electronic case filing system.

1

1    Since the initiation of this lawsuit, Carolyn W. Colvin has
2   replaced Astrue as the Acting Commissioner of Social Security.
3   Colvin is therefore substituted for her predecessor pursuant to
4   Federal Rule of Civil Procedure 25(d).  Defendant filed a Cross-
5   Motion for Summary Judgment and Opposition to Plaintiff's Motion
6   for Summary Judgment on March 28, 2013, along with a Memorandum of
7   Points and Authorities [ECF No. 19].  Colvin refiled the same
8   Cross-Motion for Summary Judgment and Opposition to Plaintiff's
9   Motion for Summary Judgment, along with the same Memorandum of
10  Points and Authorities; however, it was docketed as a "Response in
11  Opposition re 18 [Plaintiff's] Motion for Summary Judgment" [ECF
12  No. 20].

13    The Court finds this matter is suitable for decision without
14  oral argument.  <u>See</u> S.D. Cal. Civ. R. 7.1(d)(1).  For the reasons
15  set forth below, the Court recommends that the district court **DENY**
16  Aledia's Motion for Summary Judgment [ECF No. 18] and **GRANT**
17  Defendant's Cross-Motion for Summary Judgment [ECF No. 19].

18               **I.   MEDICAL EVIDENCE**

19    Plaintiff is a fifty-eight year old woman with one year of
20  college education.  (Admin. R. Attach. #2, 45-46, 63, ECF No. 11.)
21  Aledia was evaluated for myeloma and lymphoma in 2007 and 2009; all
22  tests came back negative.  (<u>Id.</u> Attach. #8, 477.)  In February of
23  2008, Plaintiff was diagnosed with fatty liver disease, but by June
24  of 2010 her liver condition was "stable."  (<u>Id.</u> Attach. #7, 420;
25  <u>id.</u> Attach. #8, 482.)

26    Aledia was admitted to Grossmont Hospital on November 11,
27  2009, because she felt dizzy and weak, and had pain in her right
28  shoulder.  (<u>Id.</u> Attach. #7, 216.)  A chest x-ray performed by Dr.

Tere Trout showed no significant abnormality. (<u>Id.</u> at 222.) Dr. Craig Norris ordered a CT scan, which revealed that Plaintiff had no bone lesions in her chest, pelvic area, or abdomen. (<u>Id.</u> Attach. #8, 519-20.) Medical doctor Kumara Prathipati conducted a physical examination on December 14, 2009, which yielded normal findings. (<u>Id.</u> Attach. #7, 329.) A bone marrow biopsy was also performed that month, which showed "no evidence of involvement by a lymphoproliferative disorder." (<u>Id.</u> at 339.) The following month, Aledia again complained of dizziness, weakness, headaches, and foot pain. (<u>Id.</u> at 330.) Dr. Prathipati examined her and found no abnormalities. (<u>Id.</u> at 331-32.) In April of 2010, Plaintiff saw Dr. Prathipati because of her dizziness, leg weakness, and pain in her ribs and right foot. (<u>Id.</u> at 334.) Her doctor was unable to determine the etiology of her dizziness, but noted that Aledia was undergoing therapy for vertigo. (<u>Id.</u>)

On July 1, 2010, Aledia returned to Dr. Prathipati and claimed that her fatigue was getting worse and that she was experiencing head and body aches, nausea, and dizziness. (<u>Id.</u> at 391.) Again, the doctor was unable to determine what was causing the chronic dizziness and fatigue. (<u>Id.</u> at 393.) The doctor diagnosed Plaintiff with monoclonal gammopathy. (<u>Id.</u>) The following month, Dr. Prathipati was still unable to determine the cause of Aledia's "extreme fatigue," but expressed that an upcoming bone marrow exam and consultation with an oncologist would likely help determine the etiology of Aledia's symptoms. (<u>Id.</u> at 413.)

## II. THE ADMINISTRATIVE HEARING

On March 4, 2011, an administrative hearing was held before Administrative Law Judge ("ALJ") Treblin. (<u>Id.</u> Attach. #2, 42.)

1  Plaintiff and her former attorney, Todd Greenwold, were present.

2  (Id.)

3      Aledia testified that she worked as an electronic technician

4  from 1997 until her resignation in 2009.  (Id. at 47, 55-56.)  She

5  also previously worked in real estate.  (Id. at 48.)  Plaintiff

6  claimed that she had monoclonal gammopathy, which caused pain in

7  her bones and muscles as well as constant fatigue.  (Id. at 48-49.)

8  Additionally, she stated that she suffered from liver problems,

9  high blood pressure, and swelling in her feet and legs.  (Id. at

10  49.)  Aledia took no medication for her monoclonal gammopathy, but

11  she took an unspecified high blood pressure medication, as well as

12  Prilosec, Naproxen (for swelling), Cotryline (for gout), meclizine,

13  and Prozac.  (Id. at 49-50, 58-59.)  She submitted that she did not

14  experience any side effects from these medications.  (Id. at 51.)

15      Plaintiff maintained that she could lift up to ten pounds, but

16  experienced "problem[s]" with both hands.  (Id. at 51-52.)  She

17  could sit, stand, or walk for one hour at a time, but felt dizzy

18  when bending down and getting back up.  (Id. at 52.)  On good days,

19  Aledia was able to clean her home for short periods of time.  (Id.

20  at 54.)  She claimed that she spent approximately four days a week

21  in bed all day.  (Id. at 54-55.)

22      Plaintiff testified that during her last three years as an

23  electronic technician, she was "really, really sick and [her] feet

24  [were] always swelling . . . ."  (Id. at 57.)  She stated that near

25  the end of her employment, her medical condition often caused her

26  miss work or leave early.  (Id.)  Even though her job did not

27  require her to stand, she expressed that sitting became too much to

28  tolerate because she frequently felt dizzy and weak.  (Id.)

4

1   Plaintiff explained that she was awaiting test results for a

2   possible cancer diagnosis and felt that her medical condition was

3   deteriorating.  (Id. at 57-58.)

4      Aledia's attorney asserted that Plaintiff had a good work

5   history and recently developed pre-myeloma lymphoma, which was

6   "consistent with a Cancer [sic]."  (Id. at 60.)  The attorney

7   indicated that Aledia resigned from her job due to her worsening

8   medical condition.  (Id.)

9      The ALJ found that Plaintiff suffered from severe impairments:

10  monoclonal gammopathy, fatty liver, and hypertension.  (Id. at 28.)

11  But she did not have an impairment or combination of impairments

12  that met or equaled a listed impairment that would make her

13  eligible for benefits.  (See id.)  Furthermore, Judge Treblin found

14  that Aledia "has the residual functional capacity to perform the

15  full range of sedentary work as defined in 20 CFR 404.1567(a)."

16  (Id.)

17              III.  APPLICABLE LEGAL STANDARDS

18  A.   Generally

19     To qualify for disability benefits under the Social Security

20  Act, an applicant must show two things:  (1) He or she suffers from

21  a medically determinable impairment that can be expected to last

22  for a continuous period of twelve months or more, or would result

23  in death; and (2) the impairment renders the applicant incapable of

24  performing the work that he or she previously performed or any

25  other substantially gainful employment that exists in the national

26  economy.  See 42 U.S.C.A. §§ 423(d)(1)(A), (2)(A) (West 2011).  An

27  applicant must meet both requirements to be classified as

28  "disabled."  Id.

1    Sections 205(g) and 1631(c)(3) of the Social Security Act
2    allow applicants whose claims have been denied by the Social
3    Security Administration to seek judicial review of the
4    Commissioner's final agency decision.  Id. §§ 405(g), 1383(c)(3).
5    The district court may affirm, modify, or reverse the
6    Commissioner's decision.  Id. § 405(g).  The court should affirm
7    the decision unless "it is based upon legal error or is not
8    supported by substantial evidence."  Bayliss v. Barnhart, 427 F.3d
9    1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d
10   599, 601 (9th Cir. 1998)).  The district court may also remand the
11   matter to the Social Security Administration for further
12   proceedings.  42 U.S.C.A. § 405(g).
13   **B.    <u>Remand for Further Proceedings</u>**
14       A district court may remand a Social Security disability
15   matter to the Commissioner of Social Security under sentence four
16   of 42 U.S.C. § 405(g).  Hoa Hong Van v. Barnhart, 483 F.3d 600, 605
17   (9th Cir. 2007).  That provision states, "The court shall have
18   power to enter, upon the pleadings and transcript of the record, a
19   judgment affirming, modifying, or reversing the decision of the
20   Commissioner of Social Security, with or without remanding the
21   cause for a rehearing."  42 U.S.C.A. § 405(g).  "A sentence-four
22   remand is essentially a determination that the Commissioner erred
23   in denying benefits."  Havrylovich v. Astrue, No. 09-1113-HA, 2011
24   U.S. Dist. LEXIS 7187, at *19 (D. Or. Jan. 25, 2011) (citing Hoa
25   Hong Van, 483 F.3d at 605).  If a case is remanded for a rehearing,
26   the Commissioner may modify or affirm the original findings of fact
27   or the decision.  See 42 U.S.C.A. § 405(g).
28

6

1    A remand to the Commissioner for further proceedings or to
2  award benefits is within the court's discretion.  <u>McAllister v.</u>
3  <u>Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).  "'If additional
4  proceedings can remedy defects in the original administrative
5  proceedings, a social security case should be remanded.  Where,
6  however, a rehearing would simply delay receipt of benefits,
7  reversal [and an award of benefits] is appropriate.'"  <u>Id.</u> (quoting
8  <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981)).  "[T]he
9  proper course, except in rare circumstances, is to remand to [an
10  administrative] agency for additional investigation or
11  explanation."  <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002) (internal
12  quotation marks and citation omitted) (discussing remand to Board
13  of Immigration Appeals).

14                          **IV.  DISCUSSION**

15    At the time of ALJ Treblin's decision, Aledia had not been
16  diagnosed with cancer.  (Admin. R. Attach. #2, 31, ECF No. 11.)[2]
17  The ALJ determined that Plaintiff had monoclonal gammopathy, fatty
18  liver disease, and hypertension, but was not disabled and was able
19  to perform a full range of sedentary work.  (<u>Id.</u> at 28, 32.)  He
20  based his findings, in part, on his conclusion that Aledia was not
21  credible.  (<u>Id.</u> at 31.)  Plaintiff contends that the ALJ provided
22  insufficient reasons for rejecting medical evidence and her
23  testimony.  (Mot. Summ. J. Attach. #1 Mem. P. & A. 6, ECF No. 18.)[3]

24  _____

25    [2]  There is also no evidence that she has been diagnosed with
     cancer subsequent to the ALJ's decision.

26    [3]  Aledia's argument heading reads, "The ALJ failed to provide
27  legally sufficient reasons to reject the medical evidence and
     testimony of Estrella Aledia which was consistent with the medical
     records."  (<u>Id.</u>)  Yet, Plaintiff does not offer any support for her
28  contention that the ALJ improperly rejected medical evidence.  She
     does not cite to or provide a summary of the evidence, or explain

                              7

1   Commissioner Colvin asserts that substantial evidence supported ALJ

2   Treblin's determination that Aledia's statements were not fully

3   credible.  (See Cross-Mot. Summ. J. & Opp'n Attach. #1 Mem. P. & A.

4   2, ECF No. 19.)

5        "Administrative law judges are responsible for reviewing the

6   evidence and making findings of fact and conclusions of law."  20

7   C.F.R. § 404.1527(e)(2) (2012).  Conflicts in the evidence should

8   be resolved by the Commissioner, not the courts.  See Laffoon v.

9   Califano, 558 F.2d 253, 254 (5th Cir. 1977); see also Sprague v.

10  Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  The ALJ is the final

11  arbiter of ambiguities in the medical evidence.  Tommasetti v.

12  Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008).  The Commissioner's

13  decision must be upheld when the evidence would support more than

14  one rational interpretation.  Havrylovich, 2011 U.S. Dist. LEXIS

15  7187, at *4 (citing Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir.

16  2002)).

17       Plaintiff requests that her matter be remanded for the payment

18  of benefits or, in the alternative, remanded to the Commissioner

19  "for the correction of the legal errors."  (Mot. Summ. J. Attach.

20  #1 Mem. P. & A. 17, ECF No. 18.)  The Ninth Circuit has articulated

21  the standard district courts must apply when deciding whether to

22  remand a matter for further proceedings:

23            Remand for further administrative proceedings is
          appropriate if enhancement of the record would be useful.
24        Conversely, where the record has been developed fully and

25  _____

26  how the ALJ's alleged rejection was improper.  Rather, it appears
    that Aledia's reference to the medical evidence is only offered in
    support of her single claim that the ALJ erred in rejecting her
27  testimony.  (See id. at 14.)  For these reasons, the Court
    construes Aledia's reference to the medical evidence to be in
28  support of this claim, rather than a separate basis for challenging
    ALJ Treblin's decision.

> further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits.  More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted); see Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011) (applying the standard outlined in Benecke).  "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be."  Strauss, 635 F.3d at 1138.

Aledia insists that her testimony shows that she is incapable of "maintaining substantial gainful work." (Mot. Summ. J. Attach. #1 Mem. P. & A. 6, ECF No. 18.)  She argues that in order for the ALJ to reject her testimony, he needed to provide clear and convincing reasons for doing so. (Id. at 7.)  According to Plaintiff, however, ALJ Treblin provided legally insufficient and conclusory reasons for his adverse credibility determination.  (Id. at 8, 10.)

She concludes that the administrative law judge rejected her testimony because it was not supported by objective medical evidence.  (Id. at 10.)  She insists that an ALJ may not reject subjective pain testimony solely on the basis of objective medical evidence.  (Id.)  Plaintiff claims that the ALJ's findings are inconsistent because he made note of her "'vigilance' in seeking medical treatment" and impressive work history, the latter

9

"'lend[ing] credibility to her statements.'"  (Id. at 11.)
Plaintiff continues, "Consequently, in evaluating Ms. Aledia's
testimony the ALJ is trying to have it both ways: finding Ms.
Aledia credible and not credible at the same time."  (Id. at 12.)

    Next, Plaintiff asserts that the Judge Treblin improperly
rejected her testimony based on her daily activities.  (Id. at 13-
14.)  "Evidence that a claimant can participate in basic human
function 'is not determinative of disability.'"  (Id. at 13.)
Aledia urges that the ALJ failed to explain how her "meager
activities relate to the ability to perform gainful work activity
over a 40 hour, five day work week."  (Id. at 14.)  This failure,
according to Plaintiff, constituted reversible error.  (Id.)

    The claimant further notes that her treating physician's
reports were consistent with her testimony, which supports her
credibility.  (Id.)  Moreover, there was no evidence that Aledia
was malingering.  (Id. at 15.)  Based on the above, Plaintiff
requests that the Court reverse and remand this case for the
payment of benefits.  (Id. at 17.)

    In contrast, Colvin alleges that substantial evidence
supported the ALJ's findings that Aledia's statements were not
fully credible.  (Cross-Mot. Summ. J. & Opp'n Attach. #1 Mem. P. &
A. 2, EFC No. 19.)  Defendant contends that ALJ Treblin properly
weighed the evidence that supported and detracted from Aledia's
credibility.  (Id. at 4.)  "Weighing in favor of Plaintiff's
credibility, the ALJ properly considered the vigilance required by
Plaintiff in following up with medical providers, as well as her
good work history."  (Id. at 5.)

The administrative law judge concluded that "the medical evidence did not support Aledia's alleged severity or degree of functional limitation as to her reports of pain, weakness, dizziness, and fatigue[,]" and this weighed against Plaintiff's credibility. (Id. (citing Admin. R. Attach. #2, 31, ECF No. 11).) Colvin asserts that the ALJ properly determined that Plaintiff's "symptoms were of undetermined significance or had no clear etiology." (Id.) Defendant cites to medical evidence showing that Aledia's doctors struggled to determine the cause of her complaints. (Id. at 5-6 (citing Admin. R. Attach. #7, 222, 334, 393, 413, ECF No. 11).) "[T]he ALJ properly considered that not only did the medical evidence not support the extent of Plaintiff's subjective complaints, but demonstrated that her symptoms were of undetermined significance . . . i.e., that the evidence did not clearly support the existence of some of her alleged symptoms." (Id. at 6.)

Further, Colvin insists that objective evidence did not support the severity of Aledia's alleged symptoms. (Id.) Defendant contends that Plaintiff's diagnostic exams were "essentially negative" and that her physical exams revealed that she had "normal joints, was neurologically intact, and had no leg edema and no calf tenderness." (Id. at 6-7 (citing Admin. R. Attach. #2, 31, ECF No. 11).) According to Colvin, numerous medical exams and reports showed normal findings. (Id. at 7 (citing Admin. R. Attach. #2, 48-49, 51-52, ECF No. 11; id. Attach. #7, 222, 292-93, 331, 334; id. Attach. #8, 464, 501, 520).) Aledia was also found to be "generally healthy." (Id.)

1    Next, the Defendant asserts that the ALJ properly determined
2    that Plaintiff's medication history was inconsistent with the
3    alleged severity of her symptoms and functional limitations.  (Id.
4    at 7-8.)  Colvin notes that Aledia did not take medication for her
5    fatty liver disease or monoclonal gammopathy; she did take Prilosec
6    for gastroesophageal reflux disease, Naproxen for pain, and took
7    other medications, all without side effects.  (Id. at 8.)  Based on
8    ALJ Treblin's findings, Defendant urges that "[t]he effectiveness
9    of such conservative treatment, along with the lack of side
10   effects, undermined Plaintiff's allegations that her pain and other
11   symptoms disabled her."  (Id.)  Accordingly, Colvin requests that
12   the Court affirm the Commissioner's decision.  (Id. at 10.)

13       "In order for the ALJ to find [claimant's] testimony
14   unreliable, the ALJ must make 'a credibility determination with
15   findings sufficiently specific to permit the court to conclude that
16   the ALJ did not arbitrarily discredit claimant's testimony.'"
17   Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1224 n.3 (9th
18   Cir. 2010) (quoting Thomas, 278 F.3d at 958).  In evaluating the
19   credibility of a plaintiff's testimony regarding subjective pain,
20   the adjudicator must engage in a two-step analysis.  Vasquez v.
21   Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v.
22   Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)); see Batson v.
23   Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir.
24   2004).  "'First, the ALJ must determine whether the claimant has
25   presented objective medical evidence of an underlying impairment
26   which could reasonably be expected to produce the pain or other
27   symptoms alleged.'"  Vasquez, 572 F.3d at 591 (quoting
28   Lingenfelter, 504 F.3d at 1036).  Second, if the claimant satisfies

12

12cv01744 WQH(RBB)

the first step and there is no evidence of malingering, the ALJ may
reject the claimant's testimony about the severity of the symptoms
if he gives "'specific, clear and convincing reasons'" for doing
so.  Id. (quoting Lingenfelter, 504 F.3d at 1036); Smolen v.
Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996).

Here, Judge Treblin initially determined that Aledia's
impairments "could reasonably be expected to cause the alleged
symptoms . . . ." (Admin. R. Attach. #2, 30, ECF No. 11.)  Neither
the Plaintiff nor the Defendant challenges this conclusion.  The
first prong of the ALJ's inquiry regarding Aledia's credibility is
therefore satisfied.  See Vasquez, 572 F.3d at 591.  The issue,
then, is whether Judge Treblin provided clear reasons for the
adverse credibility finding that are supported by the evidence in
the record.

The Commissioner's reasons for rejecting a claimant's
testimony must be "clear and convincing." Reddick v. Charter, 157
F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d
821, 834 (9th Cir. 1995)).  To support a finding that the plaintiff
was not credible, the ALJ must "'point to specific facts in the
record which demonstrate that [the plaintiff] is in less pain than
she claims.'" Vasquez, 572 F.3d at 592 (quoting Dodrill v.
Shalala, 12 F.3d 915, 918 (9th Cir. 1993)).  The ALJ must make
specific findings "stat[ing] which pain testimony is not credible
and what evidence suggests the complaints are not credible."
Dodrill, 12 F.3d at 918.  A reviewing court should not be forced to
speculate as to the grounds for an administrative law judge's
rejection of a plaintiff's allegations of disabling pain.  Bunnell
v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citing Murray v.

13

1   Heckler, 722 F.2d 499, 502 (9th Cir. 1983)); see also Steele v.

2   Barnhart, 290 F.3d 936, 941 (7th Cir. 2002) (explaining that the

3   ALJ must build an accurate and logical connection between the

4   evidence and the decision).

5        In general, questions of credibility are for the ALJ to

6   resolve.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

7   Courts should not "second-guess" an ALJ's credibility

8   determinations.  Allen v. Heckler, 749 F.2d 577, 580 (9th Cir.

9   1984).  If the evidence is conflicting and could be rationally

10  interpreted more than one way, the court must uphold the ALJ's

11  decision.  Id. at 579.

12       Social Security Ruling 96-7p provides the relevant standard:

13           4. In determining the credibility of the individual's
             statements, the adjudicator must consider the entire case
14           record, including the objective medical evidence, the
             individual's own statements about symptoms, statements
15           and other information provided by treating or examining
             physicians or psychologists and other persons about the
16           symptoms and how they affect the individual, and any
             other relevant evidence in the case record.  An
17           individual's statements about the intensity and
             persistence of pain or other symptoms or about the effect
18           the symptoms have on his or her ability to work may not
             be disregarded solely because they are not substantiated
19           by objective medical evidence.

20           5. It is not sufficient for the adjudicator to make a
             single, conclusory statement that 'the individual's
21           allegations have been considered' or that 'the
             allegations are (or are not) credible.'  It is also not
22           enough for the adjudicator simply to recite the factors
             that are described in the regulations for evaluating
23           symptoms.  The determination or decision must contain
             specific reasons for the finding on credibility,
24           supported by the evidence in the case record, and must be
             sufficiently specific to make clear to the individual and
25           to any subsequent reviewers the weight the adjudicator
             gave to the individual's statements and the reasons for
26           that weight.

27  Soc. Sec. Ruling 96-7p, 1996 SSR LEXIS 4, at **2-4 (July 2, 1996).

28

                                    14

1    The Ninth Circuit has articulated the grounds on which an ALJ

2  may properly discredit a claimant's testimony:

3       In weighing a claimant's credibility, the ALJ may
        consider [claimant's] reputation for truthfulness,
4       inconsistencies either in his testimony or between his
        testimony and his conduct, his daily activities, his work
5       record, and testimony from physicians and third parties
        concerning the nature, severity, and effect of the
6       symptoms of which he complains.

7  Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)

8  (citations omitted).  Where the ALJ's credibility assessment is

9  supported by substantial evidence, it will not be disturbed even

10 where some of the reasons for discrediting a claimant's testimony

11 were improper.  Tonapetyan v. Halter, 242 F.3d 1144, 1147-48 (9th

12 Cir. 2001); see Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d

13 1155, 1163 (9th Cir. 2008).

14      Here, Judge Treblin provided the following reasons for finding

15 that Plaintiff was not fully credible:

16      The undersigned finds that the claimant's reports of
        pain, weakness, dizziness and fatigue are only partially
17      credible because the medical evidence does not support
        her alleged severity and degree of functional limitation.
18      Fortunately, the claimant has not been diagnosed with
        cancer and has not had to undergo cancer treatment.  The
19      claimant's medication history is also inconsistent with
        her alleged symptom severity and functional limitation.
20      Specifically, the claimant is not taking any medications
        for her fatty liver or monoclocal gammopathy, and she
21      reported no side effects from the medications she is
        taking.  The undersigned appreciates the vigilance
22      required in following up with medical providers and
        tracking the progress of the claimant's monoclonal
23      gammopathy; however, the record shows that follow up
        appointments have been about 1 time per month and thus
24      also would not interfere with the claimant's ability to
        sustain work activity.  The undersigned commends the
25      claimant for her good work history and that too lends
        credibility to her statements; however, the objective
26      physical exams and diagnostic findings of record do not
        support the severity of her alleged symptoms.
27      Specifically, diagnostic exams have been essentially
        negative and physical exams have showed no leg edema, no
28      calf tenderness, all of her joints were normal, and she
        was neurologically intact (Exhibits 3F/22; 7F/13, 21;

                              15

15F/5-6; 17F/3; 18F/21-22, 34, 66, 71, 90).  Indeed, many
of her reported symptoms are of underdetermined
significance or have no clear etiology (Exhibits 7F/16,
15F/6, 17F/3, 18F/34).  Accordingly, giving the claimant
the benefit of the doubt, the undersigned has limited her
to sedentary exertion work.

(Admin. R. Attach. #2, 31, ECF No. 11.)

**A.  <u>Medication History</u>**

ALJ Treblin found that Plaintiff had three severe impairments:
monoclonal gammopathy, fatty liver, and hypertension.  (<u>Id.</u> at 28.)
In November of 2010, Aledia's treating physician diagnosed
Plaintiff with monoclonal gammopathy of undetermined significance,
describing Aledia's lab results as "fairly stable."  (<u>Id.</u> at 30.)
A 2008 liver biopsy showed "fatty liver," but "in June 2010 there
was no evidence of advancing fibrosis and the claimant's provider
suspected that [Aledia's] fatty liver condition was stable."  (<u>Id.</u>)
The ALJ noted that Aledia was not taking any medication for her
fatty liver disease or monoclonal gammopathy, and her hypertension
was "well controlled" with medication.  (<u>Id.</u>)  Plaintiff did take
Prilosec, high blood pressure medication, Naproxen, Cotryline,
meclizine, and Prozac to treat various other conditions.  (<u>Id.</u> at
49-50, 58-59.)

In assessing credibility, an ALJ may consider "[t]he type,
dosage, effectiveness, and side effects of any medication."  20
C.F.R. § 404.1529(c)(3)(iv) (2012).  "[E]vidence of 'conservative
treatment' is sufficient to discount a claimant's testimony
regarding severity of an impairment."  <u>Parra v. Astrue</u>, 481 F.3d
742, 751 (9th Cir. 2007) (noting that claimant was treated with an
over-the-counter pain medication); <u>see</u> Soc. Sec. Ruling 96-7p, 1996
SSR LEXIS 4, at *21 ("[T]he individual's statements may be less

16

credible if the level or frequency of treatment is inconsistent
with the level of complaints . . . ."). The fact that Plaintiff
did not require medication for her fatty liver disease or
monoclonal gammopathy was a valid consideration as part of ALJ
Treblin's credibility determination. See Morris v. Astrue, No.
CV-11-13-JPH, 2012 WL 3548040, at *4 (C.D. Cal. Oct. 18, 2012)
("Plaintiff's allegation he suffers from disabling pain is
undermined by his failure to consistently seek treatment, to use
any medication, and by solely conservative treatment . . . ."). 
Moreover, Aledia failed to provide a good reason for not taking
medication to treat other conditions. See Smolen, 80 F.3d at 1284
(citations omitted) (stating that an ALJ may not reject symptom
testimony where the claimant provides a good reason for not taking
medication).

The administrative law judge also discredited Aledia's
testimony because she did not suffer any side effects from her
medications. (Id. at 31.) This, too, is a permissible reason for
discounting a plaintiff's credibility. See 20 C.F.R. §
404.1529(c)(3)(iv); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir.
1995) (stating that an ALJ may rely on the lack of evidence of side
effects from prescribed medications to support adverse credibility
determination); Tway v. Astrue, No. 12cv1093-WQH-WVG, 2013 WL
1316719, at *5 (S.D. Cal. Mar. 27, 2013) (holding that the absence
of adverse side effects from medication was a legitimate reason to
discredit a claimant's testimony). The medications taken by Aledia
controlled many symptoms and conditions, and they did not result in
adverse side effects. These are clear and convincing reasons for
the ALJ to discount Plaintiff's testimony.

**B.   <u>Lack of Objective Evidence</u>**

Next, Judge Treblin rejected Aledia's testimony because the objective evidence did not support the severity of her alleged symptoms. (Admin. R. Attach. #2, 31, ECF No. 11.)  The ALJ noted that Plaintiff had not been diagnosed with cancer and had symptoms of undetermined etiology.  (<u>Id.</u>)  The ALJ wrote that "[b]y August 2010, Dr. Prathipati was still unable to identify an etiology for [Aledia's] reported fatigue." (<u>Id.</u> at 29 (citing <u>id.</u> Attach. #7, 413).)  Similarly, the doctor had been unable to identify the cause of her dizziness.  (<u>Id.</u> (citing <u>id.</u> Attach. #7, 334).)  Aledia's complaints of chronic fatigue were described in the medical records as "vague." (<u>Id.</u> at 30 (citing <u>id.</u> Attach. #7, 464).)  He also stated that the medical evidence showed no abnormal findings.  (<u>Id.</u> at 31.)

"[T]he adjudicator may not discredit a claimant's testimony of pain and deny disability benefits <u>solely</u> because the degree of pain alleged by the claimant is not supported by objective medical evidence."  <u>Bunnell</u>, 947 F.2d at 346-47 (emphasis added).  Nonetheless, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).  As discussed, the ALJ provided other specific, convincing reasons for discrediting Aledia's testimony about her subjective symptoms.  His credibility determination was therefore not based solely on inconsistencies between Plaintiff's testimony and the objective medical evidence.  ALJ Treblin properly

1   articulated what testimony he found not to be credible and how the

2   evidence undermined those complaints.  See Holohan, 246 F.3d at

3   1208; Dodrill, 12 F.3d at 918.

4        Plaintiff argues that her "treating physician has described

5   Ms. Aledia's impairments as interfering with her ability to

6   maintain work activity on a consistent basis in that she will be

7   absent more than 4 days per month as a result of her severe

8   impairments." (Mot. Summ. J. Attach. #1 Mem. P. & A. 11, ECF No.

9   18.)  This overstates the evidence.  First, the conclusion

10  Plaintiff identifies is contained in the Physical Residual

11  Functional Capacity Questionnaire signed by a physician's

12  assistant.  (See Admin. R. Attach. #8, 547, ECF No. 11.)  Next,

13  "[a] physician's assistant is not a 'treating physician' and is not

14  listed in the CFR as a medical source that can provide evidence to

15  establish impairment."  Armijo v. Colvin, No. 2:12-cv-330 BCW, 2013

16  U.S. Dist. LEXIS 63759, at *10 (D. Utah May 3, 2013).  "Thus, the

17  treating physician rule does not apply to the physician's

18  assistant's opinion."  Id. at *11.  Finally, at best, a physician

19  assistant may be a medical source who is not an "acceptable medical

20  source."  Schnovell-Miller v. Colvin, No. 2:12-cv-321 EFB, 2013

21  U.S. Dist. LEXIS 46206, at *9 n.3 (E.D. Cal. Mar. 29, 2013).

22  **C.   Activities of Daily Living**

23       Plaintiff asserts that Judge Treblin relied on Aledia's daily

24  activities in rejecting her subjective testimony.  (See Mot. Summ.

25  J. Attach. #1 Mem. P. & A. 12-13, ECF No. 18.)  That is incorrect.

26  The ALJ only briefly alluded to Plaintiff's household chores when

27  recounting her testimony, and he did not state that he was relying

28  on her activities of daily living as a basis for discrediting her

testimony.  (See Admin. R. Attach. #2, 30-31, ECF No. 11.)  Judge

Treblin wrote:

> The claimant reported that she has chronic weakness,
> dizziness, fatigue, swelling in her feet and legs, and
> whole body pain that limit her ability to sit, stand,
> walk, lift, carry and perform postural movements.  She
> explained that she has good days and bad days but is
> bedridden approximately four days per week due to her
> symptoms.  She further explained that she tries to
> perform household chores but tires.  She stated that she
> takes medication for her hypertension and pain but takes
> none for her monoclonal gammopathy and fatty liver.  She
> further stated that her medications do not cause side
> effects.  She reported that she is worried about her
> health and has concentration problems but no problems
> with memory or social interaction.  Finally, she reported
> that she stopped working because of her medical problems.
> (Id. (quoting Admin. R. Attach. #2, 30, ECF No. 11).)

(Id. at 30.)

Courts may not engage in "post hoc rationalizations that

attempt to intuit what the [ALJ] might have been thinking[.]"  Bray

v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1226 (9th Cir. 2009);

see SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (noting that a

reviewing court must limit its analysis to the grounds invoked by

the administrative agency); Connett v. Barnhart, 340 F.3d 871, 874

(9th Cir. 2003).  The inquiry is whether the reasons articulated by

the ALJ in making the credibility determination were clear and

supported by substantial evidence.  The error complained of by

Aledia is not one that was made here.

**D    Partial Credibility Finding**

Because the conflicting evidence of record both supported and

detracted from Aledia's credibility, the ALJ determined that she

was "partially credible."  (Admin. R. Attach. #2, 31, ECF No. 11.)

The Plaintiff objects that ALJ Treblin is "trying to have it both

ways."  (Mot. Summ. J. Attach. #1 Mem. P. & A. 12, ECF No. 18.)

There may be instances where a finding that the claimant was truthful about certain matters would weigh against finding the claimant untruthful about related items. See Carradine v. Barnhart, 360 F.3d 751, 754 (7th Cir. 2004) ("And if [the claimant] was testifying truthfully and against her interest about her daily activities, why did the administrative law judge think she was lying about her pain.")  Even so, as a general matter, an ALJ may determine that a claimant is partially credible. See Parra, 481 F.3d at 750-51 (upholding determination that claimant and third-party witness were partially credible).

In making a credibility determination the ALJ "must specifically identify what testimony is credible and what testimony undermines the [plaintiff's] complaints." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  As noted, the Court must give deference to the ALJ's credibility determination and cannot re-weigh the evidence on review.  42 U.S.C. § 405(g) (stating that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive); Allen, 749 F.2d at 580; Waters v. Gardner, 452 F.2d 855, 858 n. 7 (9th Cir. 1971).  Here, the ALJ discussed the conflicting evidence and made his ultimate determination that "the claimant's reports of pain, weakness, dizziness and fatigue are only partially credible . . . ."  (Admin. R. Attach. #2, 31, ECF No. 11.)  This finding is supported by substantial evidence and should not be disturbed.  See Hill v. Astrue, No. 03:11-CV-01014-HU, 2013 WL 1294650, at *43 (D. Or. Feb. 4, 2013) (upholding ALJ's credibility determination where evidence was conflicting).

21

1   Judge Treblin did not discredit Aledia's testimony solely on
2   the basis that it was unsupported by objective medical evidence.
3   On the whole, the administrative law judge provided specific,
4   detailed bases for his credibility assessment, which is supported
5   by the evidence in the record.  See Turner v. Comm'r of Soc. Sec.
6   Admin., 613 F.3d at 1224 n.3; see also Belmontes v. Astrue, No.
7   1:10-cv-02378 JLT, 2012 WL 947300, at *7-8 (E.D. Cal. Mar. 20,
8   2012) (finding that the lack of treatment and insufficient
9   objective evidence were sufficient reasons for rejecting claimant's
10  testimony).  Accordingly, reversal or remand is not warranted.

11                **V.   CONCLUSION AND RECOMMENDATION**

12      "The decision of the Commissioner must be upheld if it is
13  supported by substantial evidence and if the Commissioner
14  applied the correct legal standards." Howard ex rel. Wolff v.
15  Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003) (citing Pagter
16  v. Massanari, 250 F.3d 1255, 1258 (9th Cir. 2001)).  If the
17  AlJ's decision is not supported by substantial evidence,
18  remand or reversal is appropriate.  Gallant v. Heckler, 753
19  F.2d 1450, 1457 (9th Cir. 1984).  For the reasons stated
20  above, Plaintiff's Motion for Summary Judgment [ECF No. 18]
21  should be **DENIED**, and Defendant's Cross-Motion for Summary
22  Judgment [ECF No. 19] should be **GRANTED**.  The Court recommends
23  affirming the decision of the administrative law judge.

24      This Report and Recommendation will be submitted to the
25  United States District Court Judge assigned to this case,
26  pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any
27  party may file written objections with the Court and serve a
28  copy on all parties on or before July 24, 2013.  The document

1  should be captioned "Objections to Report and Recommendation."

2  Any reply to the objections shall be served and filed on or

3  before August 7, 2013.   The parties are advised that failure

4  to file objections within the specified time may waive the

5  right to appeal the district court's order.  Martinez v. Ylst,

6  951 F.2d 1153 (9th Cir. 1991).

7

8  Dated: July 2, 2013

   RUBEN B. BROOKS

9                                    United States Magistrate Judge

10 cc:  Judge Hayes
        All Parties of Record

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28